# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| KIM BOHLMAN, | 3:05-CV-00666-RAM |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| SILVER LEGACY CAPITAL CORP. dba SILVER LEGACY CASINO, | |
| Defendant. | |

Before the court is Defendant Silver Legacy's Motion for Summary Judgment (Doc. #21). Plaintiff opposed the motion (Doc. #24) and Defendant replied (Doc. #25).

## BACKGROUND

Plaintiff Kim Bohlman alleges that she was subject to sexual harassment while employed at Defendant Silver Legacy Casino. (Doc. #1). Specifically, her complaint alleges that in late 2003 or early 2004 Defendant works for Defendant hired Jim Lordon to be Entertainment Director and that Mr. Lordon commenced to sexually harass Plaintiff and employee's of Defendant's whom Plaintiff supervised. (*Id.*). She alleges that Mr. Lordon made sexual remarks about Plaintiff's body, told Plaintiff to wear tighter cloths, told Plaintiff and her subordinates to wear shorter skirts, referred to women with derogatory terms, made statements that he wanted to have sexual relations with Plaintiff's subordinates, made sexual remarks about Plaintiff's subordinates, made statements about having an erection, stared at Plaintiff and her subordinates in an overtly sexual manner, made an assortment of sexual remarks on a regular basis, and otherwise created a hostile and offensive work environment.

(*Id.*). Plaintiff alleges that she was offended by Mr. Lordon's remarks and behavior and that a reasonable woman would have been offended by this "sexual hostility" as well. (*Id.*).

Plaintiff alleges that she complained to Defendant's Human Resource Manager, Karen Goforth, regarding Mr. Lordon's conduct and statements. (*Id.*). Plaintiff alleges that she continued to complain about Mr. Lordon until he no longer worked for Defendant. (*Id.*). Plaintiff alleges that after Mr. Lordon left Defendant's employ Plaintiff was subject to "retaliatory hostility", including a "derisive remark made by Manager Gary Carano and directed at plaintiff. (*Id.*).

Plaintiff's complaint includes causes of action for sexual harassment and retaliation in violation of Title VII. (Doc. #1). However, in her opposition to the present motion Plaintiff stipulates to dismiss her retaliation claim. (Doc. #24). Thus, only the sexual harassment claim remains.

## DISCUSSION

*A.* **Standard for Summary Judgment**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.

1 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id*.

**C.    Sexual Harassment under Title VII - Hostile Work Environment**

Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of ... sex." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment in the form of a hostile work environment constitutes sex discrimination. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). To prevail on a hostile work environment claim the plaintiff must show that the workplace was objectively hostile or abusive and that plaintiff subjectively perceived it as hostile or abusive. *Nichols v.*

1  *Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 872 (9th Cir. 2001).  The plaintiff must also
2  show that the harassment took place "because of sex."  *Id.*[1]

3  To determine if a workplace is sufficiently hostile or abusive to violate Title VII the
4  court must look at "all the circumstances" including the "frequency of the discriminatory
5  conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive
6  utterance; and whether it unreasonably interferes with an employee's work performance."
7  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  "[S]imple teasing, offhand comments, and
8  isolated incidents (unless extremely serious)" do not violate Title VII.  *Faragher v. City of Boca*
9  *Raton*, 524 U.S. 775, 788 (1998)(internal citations omitted).

10  Where sexual harassment by a supervisor creates a hostile work environment, the
11  employer is vicariously liable to the victimized employee.  *Faragher*, 524 U.S. at 807.  The
12  EEOC guidelines make clear that someone with the power to direct the Plaintiff employee's
13  daily work activities is a "supervisor."  *See* EEOC Enforcement Guidance on Vicarious
14  Employer Liability for Unlawful Harassment by Supervisors.

15  <u>Whether Plaintiff's workplace was hostile</u>

16  Here, Plaintiff has set forth evidence that Mr. Lordon (1) told her he liked it when she
17  wore short skirts and tight sweaters (Doc. #24, Exh. 2, p. 44) (2)asked what size her breasts
18  were (Id. at 45), (3) told her that he thought they were probably a D or double D size (*Id.* at
19  29), (4) asked if her breasts were hard or soft (*Id.*), (5) told her that he was a "boob guy" and
20  that if he could feel them he could tell her what size they are (Id. at 45), (6) commented that

---

[1] Defendants argues that "[b]ecause the alleged action by Gary Carano and Mike Whitemaine occurred more than 300 days prior to the time [Plaintiff] filed her NERC charge, they cannot form the basis of her sexual harassment claim."  (Doc. #21).  However, neither Plaintiff's complaint to NERC nor the complaint she filed in this court make any allegations of sexual harassment against Gary Garano or Mike Whitemaine, although Plaintiff does allege that Mr. Carano retaliated against her. (Doc. #21, Exh. 15; Doc. #1).  Defendant's arguments regarding time bar appear to be based on comments Plaintiff made in her deposition.  (Doc. #21, Exh. 1; Doc. #24, Exh. 2).  Plaintiff has not amended her complaint to include allegations of sexual harassment against Mssrs. Carano or Whitemaine.  Thus, whether or not any sexual harassment claims regarding conduct by Mssrs. Carano or Whitemaine is time barred is not at issue since no such claims have been raised.  Because her complaint only makes allegations of sexual harassment against Mr. Lordon, that is the only sexual harassment claim before the court.

4

he bets Plaintiff's "husband likes to play with your tits", (*Id.* at 45), (7) told Plaintiff of the sexual fantasies he had and that Plaintiff could never experience, sexually, what he has experienced in his life (Id. at 174), and (8) told Plaintiff that he intended to take another female spokesmodel home with him and sleep with her (Id. at 55-56). Plaintiff testified that the frequency of these comments increased from once a week, to twice week, to a couple of times each day (*Id.* at p. 48, 29, 175). Plaintiff also presents evidence that she told Mr. Lordon that his remarks were offensive to her and that she wanted him to stop making such remarks. (*Id.* at p. 48).

Defendant argues that Plaintiff's allegations, even if true, do not amount to enough to give rise to a Title VII claim. (Doc. #21, p. 19). None of the cases cited by Defendant support this argument, given the allegations and the evidence in this case. First, Defendant cites *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000), where the plaintiff based her claim on one incident in which her coworker blocked her in a corner and fondled her breasts. In *Brooks*, even though the single incident was egregious it was not enough for liability since it was only one incident. *Id.* Here, Plaintiff alleges that the sexual harassment occurred regularly from a few months after Mr. Lordon was hired until he departed (Doc. #24, Exh, 2, p. 9, p. 44), making it factually quite different from the facts in *Brooks*. Next, Defendant cites *Kortan v. Cal Youth Auth.*, 217 F.3d 1104, 1106-1111 (9th Cir. 2000). While Defendant correctly notes that the Ninth Circuit found that the offensive comments made by a supervisor to the plaintiff did not create a hostile work environment, they incorrectly characterize the comments in *Kortan* as "ongoing" whereas the Ninth Circuit specifically points out that the problem with the plaintiff's claim was that the comments were made in a "flurry" on one day, with a few other comments being made on other days in the same temporal vicinity. *Kortan*, 217 F.3d at 1110. Defendant also mischaracterizes the holding in *Jordan v. Clark*, 847 F.2d 1368, 1375 (9th Cir. 1988). In *Jordan* the reason the Ninth Circuit held that the district court did not err was due to the fact that at trial the judge determined that plaintiff's version of events was not credible due to the conflicting evidence. *Jordan*, 847 F.2d

at 1375. It was not, as Defendant implies, because the plaintiff's allegations, even if true, were insufficient as a matter of law.

Defendant urges the court to find that the conduct alleged here is not sufficiently severe and pervasive to give rise to a Title VII claim because (1) Plaintiff did not have a subjective belief that she was being harassed, (2) the workplace was not objectively hostile. The court disagrees.

First, Plaintiff's statement that she felt offended and that she thought Mr. Lordon's actions were harassment is enough to create a genuine issue of material fact regarding whether Plaintiff has a subjective belief that the workplace was hostile. (Doc. #24, Exh. 2, p. 9, p. 48). Any deposition testimony of her's which casts doubt on this, such as her statements that she had been "putting up with this [harassment] for 11 years" but it was not until the harassment "started happening to my girls ....[that] I got really defensive and felt that I needed to put a stop to it"(Doc. #21, Exh. 1, p. 58) tends to discredit her assertion that she found it subjectively hostile, but there is enough of a dispute for trial.

Second, Defendant's argument that "a reasonable person working as a spokesmodel in a casino would not perceive Lordon's comments to be so severe as to give rise to sexual harassment" fails to persuade the court. (Doc. #21, p. 19). Defendant suggests that the following facts support this conclusion: (1) the "spokesmodels' work subjects them to considerable attention for their appearances", (2) "the costumes worn by the spokesmodels ... accentuate their physical features and can reveal cleavage and midriffs", (3) Plaintiff designs said costumes and advises the other spokesmodels "in order for them to be attractive and 'sexy'", and (4) the spokesmodels often work at events where alcohol is consumed and people take "greater liberties than they might otherwise." Defendant concludes this argument, "[c]onsidering their [the spokesmodels] working environment, [Plaintiff's] allegations cannot, as a matter of law, be deemed objectively offensive." (Doc. #21, p. 21). While "the social context in which a particular behavior occurs and is experienced by its target", *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998), matters a great deal,

6

the court is unprepared to rule that, as a matter of law, no actionable sexual harassment occurs where a supervisor makes regular comments to a casino spokesmodel -- even an attractive one constantly dressed in a sexy outfit -- regarding her breasts, her dress, and his sexual fantasies.  Further, Defendant's employee manual specifically emphasizes that "no employee, male or female, should be subject to unwlecome verbal or physical conduct that is sexual in nature or that shows hostility to the Employee because of the Employee's gender." (Doc. #21, Exh. 7, p.39).  There has not been sufficient evidence set forth to permit the court to find, at this point, that the tenor of the environment in Defendant's Entertainment Department, where Plaintiff works, was or is such that a reasonable spokesmodel in that department would not find the environment hostile, were she subjected to the treatment that Plaintiff alleges.  If a reasonable jury believed Plaintiff that this conduct occurred every day, as Plaintiff testified in her deposition, then they could find that a reasonable woman in Plaintiff's position would find the workplace hostile.

**D.   Ellerth/Faragher Defense**

Under *Burlington Industries, Inc. v. Ellerth*, a defendant has an affirmative defense where the employer can prove: (1) "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and (2) "that the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." 524 U.S. 742, 764-765.  *Ellerth* only applies to  situations where the plaintiff alleges that he or she was harassed by a supervisor with immediate, or successively higher, authority over the employee. *See Ellerth*, 524 U.S. at 765.  Whether the employer had in place an anti-harassment policy and/or complaint procedure is relevant, though not dispositive. *Faragher*, 524 U.S. at 807.  When evaluating the sufficiency of the employer's response the court looks to whether its actions as a whole established a reasonable mechanism for prevention and correction of harassment.  *See Holly D. v. California Inst. Of Technology*, 339 F.3d 1158, 1177 (9th Cir. 2003).  However, where the harassed employee failed to utilize an available complaint procedure, that normally suffices

to show that the employee failed to exercise reasonable care to avoid the harm caused by the harassment. *Faragher*, 524 U.S. at 807.

Here, Plaintiff presents evidence that she first reported Mr. Lordon's harassment of her to Ms. Goforth, director of human resources, in complaints Plaintiff characterizes as "informal," some of which were during discussions that occurred during lunch breaks in the employee dining room. (Doc. #24, Exh. 2, p. 117-130). Plaintiff also presents evidence that she made Ms. Goforth aware of Mr. Lordon's conduct towards the spokesmodels under Plaintiff's supervision, such as offering them alcohol during working hours and lifting the hem of one spokesmodel's skirt. (*Id.*). Her evidence shows that she first informed Ms. Goforth of Mr. Lordon's harassment sometime around February of 2004. (*Id.* at 165). However, Ms. Goforth denies that Plaintiff ever complained to her about Mr. Lordon's conduct towards Plaintiff before April of 2005. (Doc. #21, Exh. 10, p. 15). This is a genuine dispute of material fact. If, as Defendant asserts, Plaintiff never reported Mr. Lordon's conduct until April of 2005 and they were not otherwise aware of it, then their response in April of 2005, during which Mr. Lordon was suspended and Defendant undertook an investigation, (Doc. #21) would qualify, under *Ellerth*, as an effort to promptly correct the problem. The date on which Defendant became aware, however, is in dispute.

The only evidence showing that Ms. Goforth counseled Mr. Lordon about his alleged behavior prior to April 2005 comes from a portion of Plaintiff's deposition where she stated that Mr. Lordon told her that he had been counseled and that Ms. Goforth told her that Ms. Goforth had talked to Mr. Lordon. (Doc. # 24, Exh. 2, p. 129-130). These are all hearsay statements and cannot be used to show the truth of the matter asserted - that Ms. Goforth actually counseled Mr. Lordon. While they might be admissible to show some other relevant point, such as the effect they had on Plaintiff's mental state and her calculus about whether anything further needed to be done, this testimony cannot be used to show that Ms. Goforth actually talked to Mr. Lordon. In any event, Ms. Goforth's testimony conflicts with what Plaintiff reports. (Doc. #21, Exh. 10, p. 15). According to Goforth's version of events,

she never learned about Mr. Lordon making inappropriate remarks until April of 2005 when complaints, one about conduct by a spokesmodel and one about conduct by Mr. Lordon, were brought to her attention. (Doc. #24, Exh. 4). Thus, it is unclear whether "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior." As explained above, if, as Plaintiff's testimony indicates, Defendant (through Ms. Goforth) knew about it in February of 2004 but failed to seriously investigate the matter or take corrective measures until April of 2005, then a reasonable jury could find that they did not use reasonable care to prevent and correctly promptly the alleged problem.

Defendant emphasizes that Plaintiff could have reported the alleged harassment to others besides Ms. Goforth, such as Mr. Carano and Mr. Whitemaine, and that her failure to do so shows that she did not fully utilize Defendant's reporting procedures. (Doc. # 21, p. 23; Doc. #25, p. 14-15). However, the harassment reporting procedure set forth in Defendant's employee manual does not require an employee who believes he or she has been harassed to complain to every possible person to whom a complaint can be brought, and neither Mr. Carano, the General Manager of Defendant, or Mr. Whitemaine, then the Assistant General Manager, appear on the list of people to whom employees should bring complaints of harassment. (Doc. # 21, Exh. 7, p. 39-42). Rather, the policy indicates that employees may bring complaints of illegal harassment to: "(1) the Employee Relations Advisor; (2) your Supervisor or Department Head; or (3) anyone in the Human Resources department." The policy does not provide any suggestions about what to do if the person to whom you reported the matter failed to address the situation to your satisfaction. The law does not require that a plaintiff take *all* preventative or corrective opportunities provided by the employer, only that where the plaintiff fails to avail herself of *any* such measures, the employer has a defense. *See Ellerth*, 524 U.S. at 765; *see also Holly D.,* 359 F.3d 1158 (9th Cir. 2003)(where plaintiff failed to make *any* complaints). *Plaintiff's* evidence shows that she did follow the Defendant's reporting procedures by reporting Mr. Lordon's conduct to Ms. Goforth, the director of the human resources department. The court is aware of no cases

construing "avoid harm otherwise" in a way that requires, as Defendant suggests, an employee to complain to every possible company supervisor. Further, Plaintiff testified that she did not feel comfortable going to Mr. Carano or Mr. Whitemaine. (Doc. #25, Exh. 17, p. 216) . Defendant argues that her failure to do so was unreasonable. (Doc. #21, p. 24-25). However, Plaintiff testifies at other times in her deposition that Mr. Carano and Mr. Whitemaine had both engaged in conduct towards her that she felt to be sexually harassing or at least inappropriate. (Doc. #24, Exh. 1, p. 59, 79). Given this, the court cannot agree with Defendant's argument (Doc. #21, p. 25) that her failure to report the alleged harassment to them bars her claim as a matter of law. For this reason, and for the other reasons set forth above, the court finds that genuine issues of material fact remain for trial.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. #21) is **DENIED**.

DATED: June 13, 2007.

_____
UNITED STATES MAGISTRATE JUDGE